**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LUDMILA NELIPA, *on behalf of herself and all others similarly situated*<br><br>        *Plaintiff,*<br><br>    v.<br><br>TD BANK, N.A.,<br><br>        *Defendant.* | **CLASS ACTION COMPLAINT** |

Ludmila Nelipa, Plaintiff herein, by her attorneys, brings the following Class Action Complaint on behalf of herself and all others similarly situated and alleges and complains of Defendant as follows:

<u>**PRELIMINARY STATEMENT**</u>

1.      Plaintiff is a victim of fraud. The perpetrator, who is unknown to Plaintiff, fraudulently misrepresented themselves as a TD Bank representative in a phone call, in a successful effort to obtain Plaintiff's account information and transaction approval.

2.      The perpetrator used this information to transfer and withdraw $2,500 from Plaintiff's checking account.

3.      Plaintiff disputed the charges with Defendant TD Bank, but TD Bank has refused to treat the transactions as unauthorized. TD Bank's attempt to hold Plaintiff liable directly violates the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693, *et seq.*, which protects consumers from liability for unauthorized transfers. It also breaches TD Bank's own promises regarding customer liability for unauthorized transfers.

4.      TD Bank also violated the EFTA by denying claims of unauthorized transactions without providing any written explanation and without providing to the consumer the documents TD Bank reviewed during the investigation or even notice to the consumer of the consumer's right to investigation documents.

5.      Both an explanation of the denial and a notice of the right to request these materials are required under the EFTA.

6.      Plaintiff seeks to represent a class to remedy the harm caused by TD Bank's illegal behavior and ensure that these practices cannot continue going forward.

## JURISDICTION AND VENUE

7.      The Court has jurisdiction pursuant to 15 U.S.C. § 1693m and 28 U.S.C. § 1331.

8.      The Court also has jurisdiction pursuant to 28 U.S.C. § 1332(d) because it is brought as a class action, on behalf of a Class of over 100 Class Members, whose claims aggregate in excess of $5 million, and which includes members whose state citizenship is diverse from that of Defendant.

9.      Supplemental jurisdiction exists for the state law claim pursuant to 28 U.S.C. § 1367.

10.     Venue is proper in this District because a substantial part of the events and occurrences underlying this litigation occurred within this District, and Defendant regularly conducts business here.

## PARTIES

11.     Plaintiff is a natural person and citizen of New York residing in Staten Island, NY (Richmond County).

12.     Plaintiff is a "consumer" as defined by the EFTA, 15 U.S.C. § 1693a(6).

13.     TD Bank, N.A. ("TD Bank" or "the bank") is a national banking association formed

under the laws of the United States and was, at all times relevant to this Complaint, a financial

institution as defined by the EFTA, 15 U.S.C. § 1693a(9). It is a citizen of Delaware.

## FACTS

14.     At all times relevant to the complaint, Plaintiff had a TD Convenience Checking

account with TD Bank.

15.     Plaintiff's account was primarily for personal, family and household use. It was not a

business or commercial account.

16.     On October 22, 2020, Plaintiff received a text message on her cell phone purporting

to be from the TD Bank Fraud Protection Department inquiring about a $450 Wal-Mart charge.

17.     The text was followed a few minutes later by a phone call from (or appearing to be

from) TD Bank's customer service phone number with someone identifying themselves as

calling from TD Bank.

18.     The person on the phone explained that someone was attempting to use Plaintiff's

debit card to make some cash transfer payments, and the person initiated what appeared to be a

fraud prevention process.

19.     In reality, the person on the phone was a fraudster with a clever scheme.

20.     The fraudster had "spoofed" the phone number they were calling from to make it

appear that they were calling from TD Bank. (Spoofing is when a caller deliberately falsifies the

information transmitted to your caller ID display to disguise their identity.)

21.     There had been no fraud yet and the purpose of the call was to carry out the fraud.

22.     The way the scheme works is to get a bank customer to provide enough

information—under the guise of a fraud investigation—so that the fraudster can initiate a funds

transfer.

23.     In this case, the fraudster was using a money transfer app called Zelle, which partners with TD Bank.

24.     Zelle is a service that enables a person to electronically transfer money from his or her bank account to another registered user's bank account using a mobile device or the website of a participating banking institution.

25.     To transfer funds using Zelle, the sender only needs to provide the recipient's mobile phone number or email. The transaction is typically completed within minutes.

26.     When TD Bank receives a request to send money using Zelle, it sends a series of automated text messages to the account-holder seeking confirmation of the transaction(s).

27.     In this case, the fraudster initiated several transfers, leading to a flurry of confirmation texts to Plaintiff from TD Bank.

28.     In order to continue the ruse that everything that was happening to Plaintiff was part of a fraud investigation, the fraudster directed the Zelle transfers to an account named "Rev Code."

29.     Accordingly, when the real TD Bank sent the texts seeking confirmation of payments, the language of the texts sought confirmation, somewhat confusingly, of "Payment for $200.00 to Rev Code."

30.     The fraudster explained to Plaintiff during the phone call that these texts were automatically generated to confirm a "reversal code" for the fraudulent transactions.

31.     Because TD Bank's texts were standardized and automatically generated, the fraudster was able to predict when the texts would arrive and quote the exact language of the texts and provide a false explanation for them while on the phone with Plaintiff.

32.    Plaintiff never authorized the fraudster to withdraw or transfer money from her account.

33.    She believed she was only providing authority to reverse charges fraudulently placed on her account.

34.    Ultimately, the fraudster was able to withdraw $2500 from Plaintiff's account with a series of smaller transactions on October 22, 2020—the limit of Zelle transactions permitted on a single day.

35.    The fraudster told Plaintiff that her account would be frozen and that she would receive a new card in the mail in a few days.

36.    When the new card did not arrive a few days later, Plaintiff called TD Bank and learned that TD Bank had not been the one in contact with her.

37.    TD Bank stated that her checking account was now locked but that $2,500 had been withdrawn.

38.    Plaintiff explained that she had not authorized the transfer and recounted what had happened.

39.    Plaintiff does not know the fraudster and did not act in concert with the fraudster.

40.    On November 2, 2020, Plaintiff filed a police report regarding the fraud described above and NYPD is currently investigating the matter as grand larceny.

41.    Upon information and belief, the police contacted TD Bank during the course of their criminal investigation.

42.    TD Bank nevertheless declined the fraud claim, contending that since Plaintiff provided the fraudster with the confirmation code for the transactions that they were not unauthorized transfers.

43.    On information and belief, it is the policy of TD Bank to determine that a transaction is authorized so long as the account-holder provided the access code to the person initiating the transfer, regardless of whether the account-holder did so as the result of fraud.

44.    TD Bank did not provide Plaintiff a provisional credit for the lost funds.

45.    TD Bank did not deliver or mail to Plaintiff an explanation of the reasons for its determinations or notice of the right to request reproductions with the explanation of its findings.

46.    TD Bank's relationship with its Checking Account customers is subject to a Personal Deposit Account Agreement.

47.    The Account Agreement provides, among other things, that "If you notify us within two (2) Business Days after you learn of the loss or theft of your Card or PIN, you can lose no more than $50 if someone uses your Card or PIN without your permission. If you do not notify us within two (2) Business Days after you learn of the loss or theft of your Card or PIN, and we can prove we could have prevented someone from using your Card and/or PIN without your permission if you had told us, you could lose as much as $500 ($50 if you are a resident of Massachusetts and this Agreement is governed by Massachusetts law)."

48.    The Account Agreement also reflects TD Bank's unlawful policy with respect to fraudulent transfers, stating that "you can be held liable for fraudulent use of your Card and/or PIN when PIN-based transactions are made with your ATM or Debit Card."

49.    Pursuant to the EFTA, liability for unauthorized use is sharply limited.

50.    Specifically, 15 U.S.C. § 1693g(a), "Unauthorized electronic fund transfers; limit" states in relevant part as follows:

> In no event. . . shall a consumer's liability for an unauthorized transfer exceed the lesser of-
> (1) $50; or

(2) the amount of money or value of property or services obtained in such, unauthorized electronic fund transfer prior to the time the financial institution is notified of, or otherwise becomes aware of, circumstances which lead to the reasonable belief that an unauthorized electronic fund transfer involving the consumer's account has been or may be effected.

51.     Thus, the consumer's liability for unauthorized use is generally capped at a maximum of $50 for unauthorized transfers.[1]

52.     It is common sense that a person seeking to prevent a fraudulent transfer that provides account information to a person falsely posing as a customer service representative is not authorizing the criminal to initiate additional fraudulent transfers for the criminal's benefit. *Dioquino v. Sempris, LLC*, No. CV1105556SJOMRWX, 2011 WL 13127143, at *10 (C.D. Cal. Dec. 8, 2011) (finding that voluntarily giving the card number for a purpose other than to authorize new purchases did not constitute furnishing the card for the purpose of the statutory language).

53.     Any question regarding whether provision of means of account access to a criminal posing as a customer service representative constitutes "authorized use" under the statute (a nonsensical proposition) was resolved by the CFPB's Official Interpretation of the Regulation E, regarding 12 C.F.R. 1005.2(m).

1005.2 details unauthorized use as follows:

(m) "Unauthorized electronic fund transfer" means an electronic fund transfer from a consumer's account initiated by a person other than the consumer without

---

[1] This cap is increased to $500 dollars where the consumer waits more than two business days after becoming aware of the unauthorized transaction to notify the financial institution.  The consumer's liability may not be subject to any cap where the consumer waits more than 60 days after receiving a monthly statement reflecting the disputed transaction to notify the financial institution, but this rule is subject to various exceptions and limitations.  § 1693g(a); 12 CFR § 1005.6(b).  The caps applicable in instances where the consumer notifies the financial institution more than two business days after becoming aware of the unauthorized use are not at issue in this litigation.

actual authority to initiate the transfer and from which the consumer receives no benefit. The term does not include an electronic fund transfer initiated:

(1)     By a person who was furnished the access device to the consumer's account by the consumer, unless the consumer has notified the financial institution that transfers by that person are no longer authorized[.]

54.     The Official Interpretation makes clear, however, that the carve out for instances where the transaction is by someone who was provided with the access device by the consumer applies where a consumer knowingly provides the access device and authority to use it to make transfers to a friend, family member or co-worker, but does not reach instances where the access device is used by an employee of a financial institution or, critically, ***where the access device was obtained by fraud***:

1. Transfer by institution's employee. A consumer has no liability for erroneous or fraudulent transfers initiated by an employee of a financial institution.

2. Authority. If a consumer furnishes an access device and grants authority to make transfers to a person (such as a family member or co-worker) who exceeds the authority given, the consumer is fully liable for the transfers unless the consumer has notified the financial institution that transfers by that person are no longer authorized.

**3.** Access device obtained through robbery or fraud. **An unauthorized EFT includes a transfer initiated by a person who obtained the access device from the consumer through fraud or robbery.**

Official Interpretation of the Regulation E, regarding 12 C.F.R. 1005.2(m) (emphasis added).

55.     Defendant's policy and practice of holding consumers duped into providing account access under false pretenses liable for charges initiated by fraudsters thus violates the EFTA.

## CLASS ALLEGATIONS

56.     Plaintiff brings this claim on behalf of herself, and on behalf of all other persons similarly situated, pursuant to Fed. R. Civ. P. 23.

57.     Plaintiff asserts her claims against Defendant on behalf of herself and the Classes defined as follows:

58.     **EFTA Excess Consumer Liability Class.** All persons who:

    **a.** have or had an account with TD Bank; and

    **b.** notified TD Bank that they had been induced by fraud to provide another person with their account access device leading to unauthorized charges and provided enough information that TD Bank could identify the name and account number of the consumer; and

    **c.** within one year prior to filing of this action, TD Bank determined that the transactions were authorized because the class member provided the access device to the fraud perpetrator; and

    **d.** who notified TD Bank:

        **i.**   within two business of the alleged loss or theft and who alleged a loss of more than $50; or

        **ii.**  who notified TD Bank within 60 days of TD Bank's transmittal of the first monthly statement containing the periodic statement containing the disputed charges and who alleged a loss of more than $500; or

        **iii.** who notified TD Bank more than 60 days after TD Bank's transmittal of the first monthly statement containing the disputed charges.

59.     **Breach of Contract Class**. All persons who:

    **a.**  Were parties to TD Bank's Personal Deposit Account Agreement; and

    **b.**  notified TD Bank that they had been induced by fraud to provide another person with their account access device leading to unauthorized charges; and

    **c.**  within six years prior to filing of this action, TD Bank determined that the transactions were authorized because the class member provided the access device to the fraud perpetrator; and

    **d.**  for whom TD Bank did not determine that the account holder acted in concert with the perpetrator; and

    **e.**  who notified TD Bank:

        **i.**  within two business of the alleged loss or theft and who alleged a loss of more than $50; or

        **ii.**  who notified TD Bank within 60 days of TD Bank's transmittal of the first monthly statement containing the periodic statement containing the disputed charges and who alleged a loss of more than $500; or

        **iii.**  who notified TD Bank more than 60 days after TD Bank's transmittal of the first monthly statement containing the disputed charges.

60.    **EFTA Failure to Provide Notice Class.** All persons who:

    **a.**  have or had an account with TD Bank; and

    b.  notified TD Bank that the person's account contained an error, the amount of the error, the reasons for the person's belief that an error occurred, and provided enough information that TD Bank could identify the name and account number of the consumer; and

**c.** within one year prior to filing of this action, TD Bank determined that an error did not occur; and

d.  for whom TD Bank did not deliver or mail, within 3 business days after the conclusion of its investigation, an explanation of TD Bank's findings concerning the error that contained notice of the consumer's right to request reproductions of all documents which TD Bank relied on to conclude that such error did not occur.

61.     As used in the class definitions, the term "access device" means a card, code, or other means of access to a consumer's account, or any combination thereof, that may be used by the consumer to initiate electronic fund transfers, as well as any other device, information or means of access that meets the definition of "access device" pursuant to the EFTA, see, e.g. § 1005.2(a)(1).

62.     Excluded from the Classes is anyone employed by counsel for Plaintiff in this action and any Judge to whom this case is assigned, as well as his or her immediate family and staff.

*Numerosity*

63.     TD Bank is one of the ten largest banks in the United States with more than 9 million customers throughout the United States.

64.     Fraud involving unauthorized transactions through Zelle and other similar "instant" cash transfer apps is prevalent and growing.

65.     As alleged above, TD Bank's policy and practice, reflected in TD Bank's Account Agreement, is to deny claims of unauthorized transfers if the account-holder provided the access code to the person initiating the transfer, regardless of whether the account-holder did so as the result of fraud.

66.     Sometimes, TD Bank does not send any explanation of its findings concerning the error.

67.     But even when it does, the standardized letter do not include notice of the consumer's right to request reproductions of all documents which TD Bank relied on to conclude that such error did not occur.

68.     Thus, there are undoubtedly thousands of customers that have already been victims of Defendant's unlawful policies and practices.

69.     And there are thousands more consumers who will be subject to these unlawful policies and practices in the future.

70.     As such, each class is sufficiently numerous that joinder of all members is impracticable.

71.     Although the exact number of members of each class and their addresses are unknown to Plaintiff, they are readily ascertainable from Defendant's records.

*Existence and Predominance of Common Questions*

72.     Common questions of law and fact exist as to Plaintiff and all members of the Classes and predominate over questions affecting only individual members of the Classes.

73.     These common and predominant questions include:

a.     Whether Defendants' determinations that no error occurred on the grounds that a transaction is authorized so long as the account-holder provided the access code to the person initiating the transfer—*i.e.* regardless of whether the account-holder did so as the result of fraud—are unlawful under the EFTA;

b.     Whether Defendants' determinations that no error occurred on the grounds that a transaction is authorized so long as the account-holder provided the access code to the person initiating the transfer—regardless of whether the account-holder did so

as the result of fraud—are a breach of Defendant's Personal Deposit Account Agreement;

    c.   Whether Defendant denies disputes without providing the statutorily required notice regarding the consumer's right to investigatory documents and, if so, whether this violates the EFTA.

*Typicality*

74.    Plaintiff's claims are typical of the claims of the Classes because Plaintiff is a member of the Classes and is subject to the same unlawful conduct as other members of the Classes.

75.    Thus, Plaintiff's claims—based on the same facts and legal theories as the claims of all other members of the Classes—are typical of the claims of the Classes.

*Adequacy*

76.    Plaintiff will fairly and adequately represent the interests of the members of the Classes. Her interests do not conflict with the interests of the members of the Classes she seeks to represent.

77.    Plaintiff has retained counsel experienced in prosecuting class actions and in consumer protection matters. There is no reason why Plaintiff and her counsel will not vigorously pursue this matter.

*Superiority*

78.    A class action is superior to other available means for the fair and efficient adjudication of the claims at issue.

79. The damages suffered by each individual member of the Classes may be limited. Damages of such magnitude are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct.

80. Further, it would be virtually impossible for each individual member of the Classes to redress the wrongs done to them. Even if the members of the Classes themselves could afford such individual litigation, the court system could not.

81. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system presented by the complex legal and factual issues of the case.

82. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

83. In the alternative, the Classes may be certified because:

    a. the prosecution of separate actions by the individual members of the Classes would create a risk of inconsistent or varying adjudication with respect to individual members of the Classes which would establish incompatible standards of conduct for Defendant;

    b. the prosecution of separate actions by individual members of the Classes would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other members of the Classes not parties to the adjudications or substantially impair or impede their ability to protect their interests; and

    c.   TD Bank has acted or refused to act on grounds generally applicable to the

Classes, thereby making appropriate final and injunctive relief with respect to the

members of the Class as a whole.

**FIRST CLAIM FOR RELIEF**
**(Electronic Fund Transfers Act, 15 U.S.C. § 1693 *et seq.*)**
**On Behalf of EFTA Excess Consumer Liability Class**

84.      Plaintiff repeats and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

85.      The Electronic Fund Transfer Act ("EFTA") places sharp limitations on consumer liability for unauthorized transactions.  § 1693g.

86.      Because Plaintiff did not give actual authority to the fraudster to initiate the transfers, the transactions initiated by the fraudster constituted unauthorized electronic fund transfers under § 1693a(12)

87.      These transactions do not qualify for the exception under § 1693a(12)(A) because Plaintiff did not "furnish" the fraudster with the codes; instead, as provided in 12 C.F.R. § 1005.2, the transfers were initiated by a person who obtained the codes from Plaintiff through fraud and therefore constitute unauthorized electronic fund transfers.  *See, e.g.,* Official Interpretation of the Regulation E, regarding 12 C.F.R. 1005.2(m)(3).

88.      By holding Plaintiff responsible for the full amount of the unauthorized transfer rather than the limits set forth by § 1693g(a), TD Bank has violated the EFTA.

89.      As a direct and proximate result of Defendant's violations of the EFTA, Plaintiff is entitled to an award of statutory and actual damages as well as attorney's fees and costs.

90.     Additionally, because Defendant did not have a reasonable basis for believing that Plaintiff's account was not in error, Defendant's conduct violates§ 1693f(e), entitling Plaintiff (and each member of the class) to treble damages.

### SECOND CLAIM FOR RELIEF
**Breach of Contract**
**On Behalf of Breach of Contract Class**

91.     TD Bank's Personal Deposit Account Agreement constitutes a contract between TD Bank and Checking Account customers.

92.     The Account Agreement states, "you can lose no more than $50 if someone uses your Card or PIN without your permission," unless the customer does not notify TD Bank within two business days in which case "you could lose as much as $500 ($50 if you are a resident of Massachusetts and this Agreement is governed by Massachusetts law)."

93.     By failing to limit Plaintiff and the Class Members' losses to those amounts set forth in the Account Agreement, TD Bank materially breached the Account Agreement.

94.     As a direct and proximate result of Defendant's breach of the Account Agreement, Plaintiff and members of the Class lost more funds that they should have as a result of unauthorized transfers and are entitled to an award of actual damages.

### THIRD CLAIM FOR RELIEF
**(Electronic Fund Transfers Act, 15 U.S.C. § 1693 *et seq.*)**
**On Behalf of EFTA Failure to Provide Notice Class**

95.     Plaintiff's call to TD Bank in October 2020 in which she explained that she had not authorized the transfers constituted notification to TD Bank of an error under § 1693f.

96.     As a result of a notification complying with § 1693f, TD Bank was obligated to investigate the error and determine whether an error has occurred.

97.     When TD Bank determined that an error did not occur, it was obligated to deliver or mail Plaintiff an explanation of its findings within 3 business days after the conclusion of its

investigation, and upon request of Plaintiff promptly deliver or mail to the consumer reproductions of all documents which the financial institution relied on to conclude that such error did not occur. § 1693f(d).

98.     TD Bank also had an obligation to include notice of the right to request reproductions with the explanation of its findings. § 1693f(d).

99.     TD Bank has never delivered or mailed Plaintiff any materials related to its determination that an error did not occur.

100.    As reflected in the drafting of § 1693f(d), a critical part of a good faith investigation under the EFTA is informing the subject of the investigation of the reasons for the finding and providing the subject with notice of the right to examine the documents relied upon in making determinations.

101.    TD Bank's failure to do so prevents account-holders like Plaintiff from learning the full basis for TD Bank's decision, potentially limiting their ability to successfully resolve their dispute, pursue their full rights, obtain additional information about the allegedly unauthorized charges, and fully understand the reasons for the adverse resolution of the dispute .

102.    A consumer's right to the notice in question—*i.e.* notice of the right to examine the documents relied upon by the Bank in making the adverse determination—is a procedural right which protects plaintiff's concrete interests.  Violation of that right presents a "risk of real harm" to that concrete interest.

103.    Failure to comply with § 1693f(d)'s requirement of notice entitles Plaintiff and Class Members to statutory damages pursuant to § 1693m(a) as well as attorney's fees and costs.

104.    For the reasons explained above, TD Bank's failure to provide the reasons for its error determinations also constitutes a failure to make a good faith investigation, a violation of § 1693f(e), entitling Plaintiff (and each member of the class) to treble damages.

**WHEREFORE,** Plaintiff seeks judgment in her favor and damages against Defendants and:

A.  An order certifying this case as a class action under Fed. R. Civ. P. 23, naming Plaintiff as Class Representative, and appointing her attorneys as Class Counsel;

B.  An award of actual damages, treble damages, statutory damages, attorney's fees and costs; and

C.  An injunction to end TD Bank's unlawful practices; and

D.  such other and further relief as may be necessary, just, and proper.

Dated: March 1, 2021

*/s/ Daniel A. Schlanger*
Daniel A. Schlanger
Schlanger Law Group LLP
80 Broad Street, Suite 1301
New York, NY 10004
T: 212-500-6114
F: 646-612-7996
E: dschlanger@consumerprotection.net


*/s/Beth E. Terrell*
Terrell Marshall Law Group, PLLC
Beth E. Terrell (to move for admission pro hac vice)
bterrell@terrellmarshall.com
Ryan Tack-Hooper (to move for admission pro hac vice)
ryan@terrellmarshall.com
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
Telephone: (206) 816-6603
Facsimile: (206) 319-5450

*Counsel for Plaintiff and the Putative Class*