UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

LUDMILA NELIPA, ALLISON ARCHER, and
VERDENIA EDWARDS, *on behalf of themselves
and all others similarly situated*,

Plaintiffs,

v.

TD BANK, NA.,

Defendant.

---

**MEMORANDUM AND ORDER
ADOPTING REPORT AND
RECOMMENDATION**

21-cv-01092 (LDH) (JAM)

L&#x1D00;SHANN D&#x1D07;ARCY HALL, United States District Judge:

Ludmila Nelipa, Allison Archer, and Verdenia Edwards ("Plaintiffs") bring the instant

action, on behalf of themselves and all other persons similarly situated, against TD Bank, N.A.

("TD Bank" or "Defendant") for alleged violations of the Electronic Fund Transfer Act

("EFTA"), 15 U.S.C. §§ 1693, et seq., and for breach of TD Bank's Personal Deposit Account

Agreement.

## BACKGROUND[1]

Plaintiffs were each TD Bank accountholders who fell victim to bank fraud when

unknown perpetrators, posing as TD Bank employees, tricked them into providing the scammers

with their bank account information, allowing the scammers to execute fraudulent, unauthorized

---

[1] The following facts are drawn from allegations from the amended complaint, which are assumed to be true for the purpose of deciding the instant motion, as well as evidence submitted by the parties in connection with the motion. *See Shelter Realty Corp. v. Allied Maint. Corp.*, 574 F.2d 656, 661 n.15 (2d Cir. 1978) ("[The Second Circuit has] previously held that it is proper to accept the complaint allegations as true in a class certification motion."); *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("[S]ometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question.").

.

transactions.  (Am. Compl. ¶¶ 1-2, ECF No. 12.)  Although Plaintiffs disputed the fraudulent transactions, TD Bank determined that the transactions were authorized and denied the fraud claims.  (*Id*. ¶¶ 1-4, 35-36.)  According to the Amended Complaint, TD Bank has a policy and practice of denying claims for unauthorized transfers in cases where an accountholder is tricked into providing scammers with access to his or her account or otherwise approving fraudulent transactions.  (*Id*. ¶¶ 43, 56, 137.)  Plaintiffs contend that this practice violates the EFTA and breaches TD Bank's Personal Deposit Account Agreement.  (*Id*. ¶¶ 47, 137, 157-63, 165-67.) Plaintiffs move to certify two classes of accountholders who were victims of similar scams and whose fraud claims were also denied pursuant to TD Bank's unlawful practice.  (*See* Pls.' Mot. Class Cert. ("Pls.' Mot."), ECF No. 44.)

## I.    The Electronic Fund Transfer Act

The EFTA was enacted to "provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems."  15 U.S.C § 1693.  Among other things, the EFTA limits a consumer's liability for "unauthorized electronic fund transfers," which are "electronic fund transfer[s] [("EFTs")] from a consumer's account initiated by a person other than the consumer without actual authority to initiate such transfer and from which the consumer receives no benefit."  15 U.S.C. §§ 1693a(12), 1693f(f)(1); 12 C.F.R. §§ 1005.6, 1005.2(m).  The EFTA is implemented through Regulation E, which is supplemented by the Consumer Financial Protection Bureau's ("CFPB") official interpretations of the regulations ("Official Interpretations").  *See* 12 C.F.R. § 1005 *et seq*, Supp. I, 12 C.F.R. § 1005. The Official Interpretation of the term "Unauthorized Electronic Fund Transfer," as defined by Regulation E, states that "an unauthorized EFT includes a transfer initiated by a person who

obtained the access device from the consumer through fraud or robbery." 12 C.F.R § 1005.2(m), Supp. I at 2(m).

The CFPB's Electronic Fund Transfers FAQs further clarifies what constitutes an unauthorized electronic fund transfer under Regulation E and the Official Interpretation. CFPB Electronic Fund Transfers FAQs, Bank Compliance Guide ¶ 25-061. Specifically, the FAQs provide that "when a consumer is fraudulently induced into sharing account access information with a third party, and a third party uses that information to make an EFT from the consumer's account, the transfer is an unauthorized EFT under Regulation E." *Id*. Helpfully, the FAQs also set forth certain scenarios that are considered unauthorized transfers under Regulation E, including: "(1) a third-party calling the consumer and pretending to be a representative from the consumer's financial institution and then tricking the consumer into providing their account login information, texted account confirmation code, debit card number, or other information that could be used to initiate an EFT out of the consumer's account, and (2) a third party using phishing or other methods to gain access to a consumer's computer and observe the consumer entering account login information." *Id*.

Under the EFTA, when a consumer encounters an unauthorized electronic fund transfer, he or she must notify his or her bank within 60 days. 15 U.S.C. § 1693f(a). In turn, the bank is required to investigate a consumer's allegations, determine whether an unauthorized transfer occurred, and if an unauthorized transfer occurred, reimburse the consumer for any losses for which the consumer is not deemed liable. *See* 15 U.S.C. §§ 1693f, 1693g; 12 C.F.R. §§ 1005.6, 1005.11. Importantly, the bank bears the burden of proving that any transaction was, in fact, authorized. *See* 15 U.S.C. § 1693g(b). A bank's failure to comply with EFTA regulations gives rise to civil liability under 15 U.S.C. § 1693m.

II.    **Plaintiffs' Fraud Claims**

Plaintiff Ludmila Nelipa was defrauded on October 22, 2020, when she received a text message from an imposter, posing as a representative from TD Bank's Fraud Protection Department, informing her that a $450 charge was made to her TD Convenience Checking account at a Walmart in Atlanta, Georgia.  (Am. Compl. ¶¶ 10, 14, 16.)  Shortly after she received the text, she received a call from another number that matched TD Bank's customer service number.  (*Id.* ¶ 17.)  The TD Bank customer service number had been spoofed by the imposter.  (*Id.* ¶ 20.)  On the call, the scammer informed Plaintiff Nelipa that someone was attempting to use her debit card to make cash transfer payments and that they would be initiating a "fraud prevention process" to reverse the fraudulent transaction.  (*Id.* ¶ 18.)  Under the guise of this fraud prevention, the imposter conned Plaintiff Nelipa into providing enough information for the scammer to initiate a transfer of funds, via Zelle, from Plaintiff Nelipa's account to an account named "Rev Code" and convince Plaintiff Nelipa to approve the transactions when she received automated text messages seeking confirmation of the transfers (the "SMS Prompt"). (*Id.* ¶¶ 22, 26-31.)  Ultimately, the scammer deceived Plaintiff Nelipa into transferring a total of $2,500 through a series of small Zelle transactions before informing her that her account would be frozen and that she would receive a new debit card in the mail.  (*Id.* ¶¶ 18, 28, 34.)  Plaintiff Nelipa did not discover that she had been defrauded until a few days later when the new debit card never arrived.  (*Id.* ¶ 36.)  Plaintiff Nelipa contacted TD Bank and recounted what occurred, explaining that she had not willingly authorized the $2,500 transfer.[2]  (*Id.* ¶ 38.)  A TD Bank representative told Plaintiff Nelipa that TD Bank never calls customers and that they were aware

---

[2] According to the Amended Complaint, Plaintiff Nelipa also filed a police report.  (Am. Compl. ¶ 40.)

of "spoofing" scams whereby imposters replicate TD Bank's phone number to trick customers into providing their account information.  (Decl. of Blythe H. Chandler in Supp. Mot. Class Cert. ("Chandler Decl."), Ex. 2 ("Nelipa Interrogs.") at 4-5, ECF No. 45-2.)  Nevertheless, TD Bank denied Plaintiff Nelipa's claim because evidence showed that Plaintiff Nelipa received an SMS Prompt and approved the transactions.  (Am. Compl. ¶ 42; Chandler Decl., Ex. 28 ("Crouchelli Dep.") at 192:3-11, ECF No. 45-28; Def.'s Opp. Mot. Class Cert., Ex. E ("Crouchelli Dep.") at 241:24-242:18, ECF No. 61-5.)

Plaintiff Allison Archer was defrauded on January 28, 2021, when she received a call from an individual claiming to be a TD Bank representative informing her of fraudulent charges on her TD Bank Convenience Checking account, which were made in Florida and Georgia. (Am. Compl. ¶¶ 10, 57-60.)  Plaintiff Archer was initially skeptical of the call but when she looked up the caller's number and confirmed that it was TD Bank's customer service number, she believed it to be legitimate.  (*See id*. ¶ 62.)  Plaintiff Archer provided the caller with the login credentials to her online bank account, under the guise of preventing further unauthorized transactions.  (*Id*. ¶ 64.)  Thereafter, the scammer initiated multiple transactions from Plaintiff Archer's account, which Plaintiff Archer unwittingly approved when she received the SMS Prompts from TD Bank.  (*See id*. ¶¶ 87-88; Crouchelli Dep. at 192:3-7, 241:24-242:18.)  When Plaintiff Archer reviewed her account the next day, she discovered $1,522.28 in unauthorized charges at Whole Foods stores in Alpharetta and Atlanta, Georgia.  (Am. Compl. ¶¶ 65-66; Chandler Decl., Ex. 11 ("Archer Bank Statement"), ECF No. 45-11.)  Plaintiff Archer contacted TD Bank's fraud department to dispute the transactions and file a fraud claim.  (Am. Compl. ¶¶ 68.)  The fraud claim was denied based on a determination by TD Bank that the transactions were authorized.  (*Id*. ¶¶ 70; Crouchelli Dep. at 192:3-7, 241:24-242:18.)  Plaintiff Archer later

reported the fraud to the police in both New York and Georgia and provided the police report information to TD Bank. (Am. Compl. ¶ 71, 80.) TD Bank sent Plaintiff Archer a second denial letter informing her that the provisional credit that they had issued for the unauthorized transactions during the pendency of the fraud investigation would be reversed. (*Id*. ¶ 72-74.) Plaintiff Archer withdrew the funds from her account before the credit could be reversed and continued to submit claims disputing the charges, which TD Bank continued to deny. (*Id*. ¶ 75-86.) In a third denial letter, TD Bank informed Plaintiff Archer that TD Bank would be willing to assist her in working with law enforcement to investigate and prosecute the suspected scammer. (*Id*. ¶ 88.) According to the Amended Complaint, by offering its assistance in any police investigation, TD Bank seemingly acknowledged that Plaintiff Archer was the victim of a crime. (*Id.*)

Plaintiff Verdenia Edwards was defrauded on August 20, 2020, when she received a call from an imposter posing as an Amazon representative, informing her that they were attempting to refund her for the purchase of an iPhone using her TD Convenience Checking account. (*Id*. ¶ 94-95.) The fraudster then added an accomplice, posing as a TD Bank representative, to the line purporting to confirm Plaintiff Edwards' identity to purportedly reverse the charge. (*Id*. ¶ 96.) The fraudsters were able to gain remote access to Plaintiff Edwards' phone and used this access to sign into her TD Bank account and transfer a total of $1,605 over four transactions via Zelle and Western Union. (*Id*. ¶¶ 99-100.) Because the fraudsters were controlling her phone remotely, they were also able to approve the unauthorized transactions by replying to the automated confirmation text messages. (*Id*. ¶ 104.) While this was occurring, Plaintiff Edwards used another phone to call TD Bank and inform them of the active theft. (*Id*. ¶ 106.) Plaintiff Edwards was instructed by a TD Bank representative to go to a branch to close her account and

get a new debit card.  (*Id*. ¶¶ 106-07.)  Plaintiff Edwards promptly filed a police report and went to a TD Bank branch the next day to dispute the unauthorized charges and provide documentation regarding her police report.  (*Id*. ¶¶ 109-11.)  TD Bank denied Plaintiff Edwards's fraud claim based on a determination that "an error did not occur," the "[c]ustomer indicated that they previously provided access/authorization to 3rd party [sic]," and because Plaintiff Edwards "authorized the transaction."  (*Id*. ¶¶ 116-24; Crouchelli Dep. at 199:13-24, 241:24-242:18.)

### III.    TD Bank's Standard Procedure & Decision Matrix

When an accountholder disputes a charge on his or her account, TD Bank inputs the information from the accountholder into the Claims Initiation Manager (the "CIM").  (*See* Crouchelli Dep. at 24:3-25.)  The CIM is an internal database where TD Bank records key information about the claim, including whether the claim is classified as "fraud" or "non-fraud," the resulting disposition for the claim and the reasons for the disposition, and the amount in dispute and ultimately refunded to the accountholder.  (*See* Crouchelli Dep. at 24:3-25; Chandler Decl., Ex. 29 ("Def.'s Objs. and Resps. to Pls.' Interrogs.") at 17, ECF No. 45-29.)  If a customer claims that "the customer never authorized the transaction, never participated in the transaction, and did not agree to having that transaction post to their account," the claim is classified as a "fraud" for internal routing purposes. (Crouchelli Dep. at 23:7-11.)  However, a claim is classified as "non-fraud" if the transaction was authorized, even where there was some other error with the transaction, such as an incorrect amount or recipient, or where the accountholder did not receive what they paid for.  (*Id*. at 23:12-22.)  TD Bank can re-designate claims based on information it acquires in its investigation of the claim.  (Def.'s Opp. Mot. Class Cert. at 6, ECF No. 61; Def.'s Opp. Mot. Class Cert., Ex. B ("Rosario Dep.") at 61:17-25, ECF No. 61-2.)

Claims that are classified as fraud are sent to TD Bank's fraud department for further investigation.  (*See* Pls.' Mot. Class Cert. at 6; Chandler Decl., Ex. 32 ("Layton Dep.") at 22:4-6, ECF No. 45-32.)  To investigate fraud claims, fraud agents apply an Account2Account ("A2A") Claims Procedure, whereby agents review the accountholder's banking history and online account information and then consult the "Decision Matrix" to determine whether the claim should be approved or denied.  (Pls.' Mot. Class Cert. at 6; Crouchelli Dep. at 48:17-49:16; Layton Dep. at 20:10-18, 31:18-32:18, 33:24-34:9, 98:18-99:8; *see also* Chandler Decl., Ex. 48 ("Decision Matrix"), ECF No. 52-9.)  Pursuant to the Decision Matrix, a fraud agent must supply a primary and secondary reason for denying a fraud claim.  (Decision Matrix at 2.)  Some of the "secondary denial reasons" listed on the Decision Matrix include: "the customer validated claimed transaction through SMS which was sent to phone number on file, and no changes within the past 90 days," and "[s]uccessful online banking logins occurring during the disputes time frame, indicating customer was aware of balance and transactions."  (*Id.*)  Fraud agents record the reason applied from the Decision Matrix in the CIM.  (Def.'s Objs. and Resps. to Pls.' Interrogs. at 17.)

## IV.    Report and Recommendation

Plaintiffs filed their motion for class certification on November 30, 2023, seeking to certify two classes under Rule 23(b)(3):  (1) an EFTA Excess Consumer Liability Class and (2) a

Breach of Contract Class.  Plaintiffs, pursuant to their reply,[3] propose the following class

definitions:

> **EFTA Excess Consumer Liability Class ("EFTA Class")**. All persons (1) who have or had an account with TD Bank; and (2) notified TD Bank that they had been induced by fraud to provide another person with their account access device leading to unauthorized charges; and (3) within one year prior to filing of this action, TD Bank denied the consumer's Regulation E claim for reasons substantially the same as the following: (a) Evidence shows that an SMS was received and approved by the customer's phone number on file; (b) Customer has had no recent changes to the address, phone number, or OLB credentials in the last 90 days; (c) Customer indicated that they previously provided access/authorization to 3rd party; (d) Customer fell for a scam and gave online banking credentials to a 3rd party; or (e) Customer is a victim of TD imposter scam; and (4) who notified TD Bank within two business days of the alleged loss or theft and who alleged a loss of more than $50, or who notified TD Bank at any time and who alleged a loss of more than $500.

> **Breach of Contract Class ("Breach Class")**. All persons (1) who have or had an account with TD Bank; and (2) notified TD Bank that they had been induced by fraud to provide another person with their account access device leading to unauthorized charges; and (3) within six years prior to filing of this action, TD Bank denied the consumer's Regulation E claim for reasons substantially the same as the following: (a) Evidence shows that an SMS was received and approved by the customer's phone number on file; (b) Customer has had no recent changes to the address, phone number, or OLB credentials in the last 90 days; (c) Customer indicated that they previously provided access/authorization to 3rd party; (d) Customer fell for a scam and gave online banking credentials to a 3rd party; or (e) Customer is a victim of TD imposter scam; and (4) who notified TD Bank within two business days of the alleged loss or theft and who alleged a loss of more than $50, or who notified TD Bank at any time and who alleged a loss of more than $500.

---

[3] "'[O]rdinarily, parties may not amend the pleadings through motion papers' because 'a party is not entitled to amend its complaint through statements made in motion papers.'"  *E.g.*, *Montgomery v. Stanley Black & Decker Inc.*, No. 20-4261, 2021 WL 3745759, at *2 (2d Cir. Aug. 25, 2021) (summary order) (quoting *Soules v. Conn., Dep't of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 55 (2d Cir. 2018)).  That said, here, in the report and recommendation (the "R&R") addressing Plaintiffs' motion for class certification, Judge Joseph A. Marutollo recommended that the class definitions proposed by Plaintiffs, in their reply, be certified pursuant to Rules 23(a) and (b) of the Federal Rules of Civil Procedure.  (R&R at 50-51, ECF No. 72.)  As such, for the purposes of this memorandum and order, the Court relies upon the class definitions proposed by Plaintiffs in their reply.

(Pls.' Reply Mem. Supp. Mot. Class Cert. ("Pl.'s Reply") at 4, ECF No. 62.)  Magistrate Judge Joseph A. Marutollo recommended that the Court grant Plaintiffs' motion to certify each class, finding that, with respect to each class, Plaintiffs sufficiently demonstrated the requisite numerosity, adequacy, commonality, typicality, and ascertainability of the class.  (R&R at 26-48, ECF No. 72.)  Moreover, Judge Marutollo found that common questions would predominate over individual questions and a class action is superior to other available methods for bringing these claims.  (*Id.*)  Defendant timely objected to the R&R on June 28, 2024.  (*See* Def.'s Obj. to R&R, ECF No. 78-1.)

## STANDARD OF REVIEW

When deciding whether to adopt a report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  The Court conducts a de novo review of those portions of a report and recommendation to which a party submits a timely objection.  *Id.*  Where there are no objections to portions of the report, the district court "'need only satisfy itself that there is no clear error on the face of the record.'"  *Est. of Ellington ex rel. Ellington v. Harbrew Imps. Ltd.*, 812 F. Supp. 2d 186, 189 (E.D.N.Y. 2011) (quoting *Urena v. New York*, 160 F. Supp. 2d 606, 609–10 (S.D.N.Y. 2001)).

## DISCUSSION

In determining whether to grant class certification, pursuant to Rule 23(a) and (b) of the Federal Rules of Civil Procedure, the court must engage in a two-step analysis.  *First*, under Rule 23(a), the Court must determine whether:  (1) "the [proposed] class is so numerous that joinder of all members is impracticable"; (2) "there are questions of law or fact common to the [proposed] class"; (3) "the claims or defenses of the representative parties typical of the claims

or defenses of the class"; and (4) "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Moreover, the Second Circuit has recognized an "implied requirement of ascertainability," such that a class must be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015).

Second, if a proposed class satisfies the requirements of Rule 23(a), the Court must determine whether the class satisfies Rule 23(b). Where, as here, a plaintiff seeks certification pursuant to Rule 23(b)(3), the Court must determine whether "questions of law or fact common to class members predominate over any questions affecting only individual members," and whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Notably, a court "may certify a class only after making determinations that each of the Rule 23 requirements has been met," which requires the Court to "resolve[] factual disputes relevant to each Rule 23 requirement and find[] that whatever underlying facts are relevant to a particular Rule 23 requirement have been established." *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006), *decision clarified on denial of reh'g sub nom. In re Initial Pub. Offering Sec. Litig.*, 483 F.3d 70 (2d Cir. 2007).

Defendant contend that Judge Marutollo's recommendation to grant Plaintiffs' motion for class certification is premised on three erroneous factual findings: "(1) that TD Bank's records allow for identification of individuals who told the bank they were victims of 'imposter fraud,' when, in fact, TD Bank's records would not enable the parties and the Court to ascertain who is in the putative class; (2) that all of the members of the putative class actually were victims of imposter fraud, notwithstanding a dispute of material fact on that point for every individual

11

putative class member; and (3) that TD Bank denied claims for reimbursement according to a single standardized criteria, when, in fact, the bases for each claim denial were demonstrably individualized and fact-specific." (Def.'s Obj. at 1-2.) Defendant argues that, as a result, Judge Marutollo erred in finding that Plaintiffs sufficiently demonstrated typicality, ascertainability, predominance of common questions, and the superiority of a class action. (Def.'s Obj. at 11-19.) The Court will address these arguments in turn.

## I.    Typicality

Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (quoting *In re Drexel Burnham Lambert Grp., Inc.,* 960 F.2d 285, 291 (2d Cir. 1992)). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani,* 987 F.2d 931, 936–37 (2d Cir. 1993); *see also Hasemann v. Gerber Prod. Co.*, 331 F.R.D. 239, 268 (E.D.N.Y. 2019) ("Since the claims only need to share the same essential characteristics, and need not be identical, the typicality requirement is not highly demanding." (quoting *Dial Corp. v. News Corp.*, 314 F.R.D. 108, 113 (S.D.N.Y. 2015), *amended*, No. 13-CV-6802, 2016 WL 690895 (S.D.N.Y. Feb. 9, 2016))).

In this case, Judge Marutollo determined that Plaintiffs satisfy the typicality requirement because they sufficiently allege that their injuries derive from a unitary course of conduct—i.e., that "they were subject to the same standard policies and procedures that purportedly violate the same federal law." (R&R at 36.) Specifically, Judge Marutollo found sufficient to demonstrate

typicality the evidence that Plaintiffs "informed TD Bank that they were victims of an imposter scam," "TD Bank investigated these claims in accordance with its standardized procedures," and "fraud agents used the Decision Matrix to deny Plaintiffs' claims based" on Plaintiffs' approval of "the subject transactions via text message." (*Id*. at 35 (citing Crouchelli Dep. at 48:17-21, 96:12-17, 231:4-11, 242:12-18, 199:13-200:5, 186:4-14).)[4]

Defendant argues that Judge Marutollo's recommendation was flawed in three ways: *First*, contrary to Judge Marutollo's recommendation, Plaintiffs failed to establish typicality because the record contains no evidence that the Named Plaintiffs did actually authorize the transactions at issue in their cases. (Def.'s Obj. at 13.) On this point, Defendant is mistaken. Here, the evidence clearly demonstrates that Plaintiffs each authorized the transactions at issue via SMS. (Crouchelli Dep. at 186:4-14, 199:13-200:5, 242:12-18.)

*Second*, Defendant argues that "[t]he mere fact that each putative class member allegedly 'notified TD Bank that they had been induced by fraud to provide another person with their account access device leading to unauthorized charges' does not mean that they actually were so induced by fraud." (Def.'s Obj. at 13.) Put differently, Defendant contends that, to establish actual inducement by fraud for each class member is too fact-intensive an inquiry to demonstrate typicality. (*Id*.) Not entirely.

Here, Plaintiffs contend that Defendant-violates the EFTA and TD Banks's Personal Deposit Account Agreement by adhering to a uniform procedure that does not affirmatively establish the authorization of a transaction, as required by the EFTA, and that, in fact, contradicts

---

[4] In the R&R, Judge Marutollo finds that Plaintiffs authorized the transactions via SMS and, as factual support, cites, *inter alia*, "199:13-200:5, 186:4-14." (R&R at 35.) However, the full citation would indicate Docket No. 45-28 as the appropriate document in which the pincites can be located, i.e., "[Dkt. No. 45-28 at] 199:13-200:5, 186:4-14."

the EFTA's definition of unauthorized transfers, as well as the terms of the TD Banks's Personal Deposit Account Agreement. (*See* Pls.' Mot. at 10-11, 17.) That is, Plaintiffs argue that Defendant-violates the EFTA and the Personal Deposit Account Agreement by utilizing a Decision Matrix that uniformly finds consumers liable for losses from unauthorized transfers, without satisfying the bank's burden to affirmatively investigate and establish that the transactions were, indeed, authorized. (*See id.*) As a result, Defendant's systematically deny fraud claims that are predicated on transactions executed through imposter scams, which, according to the CFBP, are unauthorized electronic fund transfers under the EFTA. (*Id.*) It is this conduct, as opposed to fraud, that Plaintiffs contend constitutes a claim that is typical of all members of the putative class. (*Id.* at 17.) "The crux of [the typicality] requirement[] is to ensure that 'maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Marisol A.*, 126 F.3d at 376 (citation omitted). Plaintiffs have demonstrated as much here. As Judge Marutollo articulated, Plaintiffs have presented sufficient evidence to demonstrate that TD Bank adheres to a policy and practice of denying claims, such as theirs, where accountholders purportedly approve transactions or provide a third party with access to their account under fraudulent pretenses. (*See* Crouchelli Dep. 251:7-13.) As such, factual variations in the fraud underlying each putative class member's claim do not defeat typicality in this action. *See Marisol A.*, 126 F.3d at 377.

Indeed, "the mere existence of individualized factual questions with respect to the class representative's claims will not bar class certification . . .[unless] a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000) (citation omitted).

14

Although Defendant contends that Plaintiffs' claim as to its liability is too fact-intensive, it fails to establish that it would have to engage in any unique defenses in response to Plaintiffs' claims. This is because Defendant's defense would center solely on whether the standard procedures followed by fraud agents violate the requirements of the EFTA and the Personal Deposit Account Agreement.  The interest of class members whose fraud claims were denied based on fraudulently induced SMS authorizations would be adequately protected because they are in alignment with those of Plaintiffs.  *See Madanat v. First Data Corp.*, 282 F.R.D. 304, 313 (E.D.N.Y. 2012) (holding that the typicality requirement was met where the plaintiff alleged that a clause that Defendant incorporated into every merchant contract was unenforceable under New York law because it was "a uniform claim that will affect all class members equally, despite minor variations in the details of merchant contracts" and "[d]eviations in the terms of individual merchant contracts [had] no bearing on whether enforcement of the provision itself [was] valid").

That said, as relief, Plaintiffs seek, *inter alia*, actual damages.  In other words, Plaintiffs seek reimbursement of the losses incurred from the alleged unauthorized transfers.  For a plaintiff who encountered an unauthorized electronic transfer to be entitled to actual damages under the EFTA, he or she must do more than demonstrate that a bank failed to investigate his or her fraud claim, in violation of the EFTA:  An award of actual damages also requires a finding that a plaintiff, in fact, suffered losses resulting from fraudulently induced authorization.  *See* 15 U.S.C. §§ 1693f, 1693g; 12 C.F.R. §§ 1005.6, 1005.11.  Stated plainly, a plaintiff seeking actual damages must demonstrate, *inter alia*, that the losses he or she incurred actually resulted from an unauthorized transfer.  As aptly noted by TD Bank, whether Plaintiffs or class members were, in fact, victims of fraud would require individualized inquiries into the facts underlying each claim for fraud and individualized determinations as to whether fraud occurred.  *See, e.g., Merisier v.*

15

*Bank of Am., N.A.*, 688 F.3d 1203, 1211 (11th Cir. 2012) (finding that whether a transaction was "authorized [under the EFTA] is a factual determination"); *Almon v. Conduent Bus. Servs., LLC*, No. SA-19-CV-01075-XR, 2022 WL 4545530, at *15 (W.D. Tex. Sept. 28, 2022) ("The threshold question of whether fraud occurred at all is a fact-intensive inquiry that will vary with the circumstances of each case."). That is, for Plaintiffs, as well as each putative class member, TD Bank would be required to assess the facts underlying each fraud claim and make a determination in line with the specific factual circumstances. And, similarly, when determining whether a transaction was, in fact, authorized, the Court would be required to engage in individualized inquiries as to each putative class member's claim. It is well settled that such individualized questions are fatal to a finding of typicality and warrant against class certification. *Wang v. Shun Lee Palace Rest., Inc.*, No. 17-CV-840 (VSB), 2023 WL 2734328 (S.D.N.Y. Mar. 31, 2023) ("The law is clear where individualized questions permeate litigation fatal dissimilarit[ies] among putative class members make use of the class-action device inefficient or unfair." (alteration in original) (internal quotation marks omitted) (quoting *In re Petrobras Secs.*, 862 F.3d 250, 270 (2d Cir. 2017) (quoting *Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 568 U.S. 455, 470 (2013)))). As such, the issue of actual damages is inappropriate for class certification.

Notably, courts in the Second Circuit have determined that, in light of the Supreme Court's decision in *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013),[5] and the language of

---

[5] In *Comcast*, the Supreme Court explained that a class cannot be certified under Rule 23 unless the plaintiffs' model or method for calculating damages is consistent with—and capable of measuring damages attributable to—the plaintiffs' theory of liability on a class-wide basis. 569 U.S. at 35-38.

16

Rule 23(c)(4) of the Federal Rules of Civil Procedure,[6] a class may still be certified as to certain issues—such as liability—while other issues, including damages, remain uncertified. *See, e.g.*, *Jacob v. Duane Reade, Inc.*, 293 F.R.D. 578, 584-89 (S.D.N.Y. 2013) (collecting cases) ("The Second Circuit. . . subscribe[s] to the view that Rule 23(c)(4)'s plain language operates as more than a mere 'housekeeping rule,' and thus permits the certification of some issues, such as liability, but not others."), *aff'd*, 602 F. App'x 3 (2d Cir. 2015); *Hart v. Rick's Cabaret Int'l, Inc.*, 60 F. Supp. 3d 447, 471-73 (S.D.N.Y. 2014) (collecting cases).  In other words, courts have bifurcated issues suitable for class certification from those not amenable to class-wide resolution. Specifically, courts in this Circuit have determined that where there is a "linkage" between the alleged injury and the damages—i.e., when there is a relationship between the two—bifurcation is proper.  *Jacob*, 293 F.R.D. at 588 (finding that "a putative class seeking Rule 23(b)(3) certification [must] demonstrate a linkage between its theory of liability and its theory of damages").  Here, as discussed, *supra*, Plaintiffs' raise a single, class-wide issue as to Defendant's liability—namely, whether TD Bank's use of a Decision Matrix violates the EFTA and its Personal Deposit Account Agreement.  Moreover, as discussed, *supra*, the actual damages to which a class member may be entitled, if at all, depend on individualized factual inquiries, rendering the issue of actual damages unsuitable for class certification.  Certainly, there is a nexus between Plaintiffs' theory of liability and their theory of damages, such that bifurcation of TD Bank's liability and damages would be appropriate.  Indeed, Plaintiffs' theory of damages flows directly from their asserted theory of liability.  Accordingly, the issue of TD

---

[6] Rule 23(c)(4) of the Federal Rules of Civil Procedure provides that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues."  Fed. R. Civ. P. 23(c)(4).

Bank's liability should be certified and bifurcated from any claims for actual damages, which are not suitable for class treatment. *Jacob*, 293 F.R.D. at 584-89.

*Third*, Defendant argues that Judge Marutollo's conclusion that the Named Plaintiffs' fraud claims were denied based on evidence of text-message approval only implicates one of five bases for denial covered by the proposed class definitions. (Def.'s Obj. at 16.) Pursuant to Paragraph 3 of the proposed class definitions for both the EFTA Excess Consumer Liability Class and the Breach of Contract Class, these classes would include TD Bank accountholders who had their fraud claims denied "for reasons substantially the same as the following: (a) Evidence shows that an SMS was received and approved by the customer's phone number on file; (b) Customer has had no recent changes to the address, phone number, or OLB credentials in the last 90 days; (c) Customer indicated that they previously provided access/authorization to 3rd party; (d) Customer fell for a scam and gave online banking credentials to a 3rd party; or (e) Customer is a victim of TD imposter scam." (R&R at 14; Pl.'s Reply at 4.) Defendant argues that, because the Named Plaintiffs assert that their fraud claims were denied pursuant to the reasoning identified in Paragraph 3(a) of the proposed class, Plaintiffs' claims are not typical of individuals who fall under Paragraphs 3(b) through 3(e). (Def.'s Obj. at 16.)

Class certification requires that a plaintiff demonstrate that "the class members have suffered the same injury." *Chow v. Shorefront Operating LLC*, 694 F. Supp. 3d 247, 252 (E.D.N.Y. 2023) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011)), *on reconsideration,* No. 19-CV-3541, 2025 WL 814751 (E.D.N.Y. Mar. 13, 2025), *amended on denial of reconsideration,* No. 19-CV-3541, 2025 WL 2306593 (E.D.N.Y. Aug. 11, 2025). However, "[t]his does not mean merely that they have all suffered a violation of the same provision of law [or breach of the same provision of an agreement]." *Id.* (quoting *Wal-Mart*

18

*Stores, Inc.*, 564 U.S. at 349).  Instead, the class claims "must depend upon a common contention

. . . of such a nature that it is capable of classwide resolution." *Id.* (quoting *Wal-Mart Stores,*

*Inc.*, 564 U.S. at 349).  Here, Plaintiffs contend that TD Bank violates the EFTA and breaches

the Personal Deposit Account Agreement by denying fraud claims based on fraudulently induced

SMS authorizations.  Although the factual background of a plaintiff's claim needs not be

identical to that of class members, *Caridad v. Metro-N. Commuter R.R.*, 191 F.3d 283, 293 (2d

Cir. 1999), typicality requires that "plaintiffs assert . . . that defendants committed the same

wrongful acts in the same manner against all members of the [sic] class." *Karvaly v. eBay, Inc.*,

245 F.R.D. 71, 82 (E.D.N.Y. 2007) (quoting *In Re Med. X-ray Film Antitrust Litig.*, No. CV-93-

5904, 1997 WL 33320580, at *4 (E.D.N.Y. Dec. 26, 1997)).  Plaintiffs make no such assertions

here with respect to categories 3(b) through 3(e) of the proposed class definition.  (*See generally*

Pls.' Mot.)  That is, Plaintiffs do not argue that Defendant denied their fraud claims, in violation

of the EFTA and in breach of the Personal Deposit Account Agreement, on the basis of the

reasons articulated in categories 3(b) through 3(e) of the proposed class definitions.  Nor does

Judge Marutollo address typicality with respect to categories 3(b) through 3(e).  As such,

typicality is not established with respect to categories 3(b) through 3(e) of the proposed class

definitions.

Given the above, Plaintiffs have demonstrated typicality with respect to TD Bank's

liability under Paragraph 3(a) of the proposed classes—consumers whose fraud claims were

denied based on SMS authorization.  The Court denies Plaintiffs' motion for class certification

with respect to actual damages under Paragraph 3(a), as well as Paragraphs 3(b) through 3(e) of

both classes, with leave to renew for a determination on whether typicality exists with respect to

Paragraphs 3(b) through 3(e) .

## II.    Ascertainability

Defendant also objects to Judge Marutollo's finding that Plaintiffs' proposed class is sufficiently ascertainable to warrant certification. (Defs.' Obj. at 16-19.) The ascertainability requirement is satisfied where a proposed class "is defined using objective criteria that establish a membership with definite boundaries." *In re Petrobras Sec.*, 862 F.3d 250, 257 (2d Cir. 2017). Importantly, Plaintiffs are not required to make "a showing of administrative feasibility at the class certification stage." *Id*. at 265. Judge Marutollo determined that, here, the proposed classes are ascertainable because TD Bank's records effectively indicate the reasoning for the denial of accountholders' claim for fraud and whether the claim are timely raised with TD Bank. (*See* R&R at 37; Nuss Decl., Ex. 1, ECF No. 53-1.) This is sufficient to ascertain who belongs in each class, particularly given TD Bank's ability to run reports and searches of their records for individuals who belong in each class. (*See* Crouchelli Dep. at 114:23- 115:25, 183:11-17.); *see In re Signet Jewelers Ltd. Sec. Litig.*, No. 16-CV-6728, 2019 WL 3001084, at *9 (S.D.N.Y. July 10, 2019) (finding ascertainability requirement met where the class definition "clearly delineate[d] the [c]lass's boundaries" and was "administrable by reference to investor records").

Defendant argues that, although TD Bank's records indicate the underlying reasons for the denial of each claim, their records do not indicate whether the accountholder "notified TD Bank that they had been induced by fraud to provide another person with their account access device leading to [an] unauthorized charge[]," as set out in Paragraph 2 of the proposed class. (Def.'s Obj. at 16-19.) Specifically, Defendant contends that the records do not provide a clear indicia of who should be included in the class because "[t]hese records contain no uniform indicia of a key element of class membership—that is, a report of imposter fraud, and they

20

frequently offer multiple reasons for the denial." (*Id.*) Defendant asserts that it would take an individual review of each claim to determine which individuals actually reported fraud. (*Id.*)

The evidence, however, shows that TD Bank's database specifically categorizes transaction disputes as 'fraud' claims and then refers to the Decision Matrix to determine whether to approve or deny these claims. (Crouchelli Dep. 85:3-86:8, 95:14-97:3, 180:12-25.) Within the subset of accountholders whose claims were categorized as fraud claims, TD Bank's records reflect the reasoning applied when denying the claim, which is typically copied from TD Bank's Decision Matrix and exhibits a level of uniformity. (*Id.*) Proposed class members, with respect to Paragraph 3(a), would be the individuals whose fraud claims were denied due to SMS authorization. The Court therefore finds that this class is sufficiently ascertainable. To the extent that Defendant argues that it would be administratively complicated for it to review its database for such claims, the ascertainability of the class is still not defeated. *See In re Petrobras Sec.*, 862 F.3d 250, 257 (2d Cir. 2017); *In re Signet Jewelers Ltd. Sec. Litig.*, No. 16-CV-6728, 2019 WL 3001084, at *9 (S.D.N.Y. July 10, 2019).

### III.    Predominance & Superiority

Where, as here, class certification is sought under Rule 23(b)(3), a plaintiff must also meet the requirements of predominance and superiority. Fed. R. Civ. P. 23(b)(3). That is, a plaintiff must demonstrate that "questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Defendant objects to Judge Marutollo's finding that predominance and superiority exist for the instant proposed classes.

### 1. Predominance

Here, Judge Marutollo found that Plaintiffs have sufficiently raised common questions of law and fact that predominate over the individual questions in both the EFTA and Breach Classes. And, to the extent that there are individual issues that need to be resolved for the EFTA and Breach Classes, Plaintiffs have established that such issues can generally be resolved with common evidence. (R&R at 38-47.) "Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002); *see also In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 227-28 (2d Cir. 2006) (collecting cases). Put differently, the predominance inquiry is concerned with whether a class-wide issue can be resolved in "one stroke." *See Dover v. Brit. Airways, PLC (UK)*, 321 F.R.D. 49, 57 (E.D.N.Y. 2017) (finding a contention "central to the validity" of the plaintiffs claim where "capable of resolution 'in one stroke'" (citing *Wal-Mart Stores, Inc.*, 564 U.S. at 350, and *Dial Corp. v. News Corp.*, 314 F.R.D. 108, 120 (S.D.N.Y. 2015))); *Moore*, 306 F.3d at 1252; *In re Nassau Cnty. Strip Search Cases*, 461 F.3d at 227-28. When plaintiffs are "'allegedly aggrieved by a single policy of [a] defendant[]'. . . the case presents 'precisely the type of situation for which the class device is suited' since many nearly identical litigations can be adjudicated in unison." *In re Nassau Cnty. Strip Search Cases*, 461 F.3d at 228 (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 146 (2d Cir. 2001), *abrogated by In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006)).

Here, with respect to their EFTA and breach of contract claims, Plaintiffs contend that TD Bank's uniform policy for reviewing fraud claims violates the EFTA and breaches the

Personal Deposit Account Agreement by holding consumers liable for transactions effectuated by fraudulent induced SMS authorization.  (Am. Compl. ¶ 137; Pls.' Mot. Class Cert. at 19-20.) This question, pertaining to TD Bank's blanket policy, is undoubtedly central to Plaintiffs' EFTA and breach of contract claims and the claims of the putative class that Plaintiffs seek to have certified in Paragraph 3(a).  Further, the resolution of questions would resolve these claims. That is, should a court find that Defendant violates the EFTA and breaches the Personal Deposit Account Agreement by uniformly denying fraud claims where accountholders were induced by fraud to authorize a transaction, per TD Bank policy, then the Plaintiffs' claims, along with the class, would be resolved.  As such, the question of whether this conduct, in fact, violates the EFTA and breaches the Personal Deposit Account Agreement is one that is common across the class and thus predominates over the individual question.

### 2.  Superiority

Class certification also requires superiority over other available methods of adjudication. Fed. R. Civ. P. 23(b)(3).  Rule 23(b)(3) sets forth a non-exhaustive list of factors "pertinent" to a finding of superiority:  "[(1)] the class members' interests in individually controlling the prosecution or defense of separate actions; [(2)] the extent and nature of any litigation concerning the controversy already begun by or against class members; [(3)] the desirability or undesirability of concentrating the litigation of claims in the particular forum; and [(4)] the likely difficulties in managing a class action." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 130 n.15 (2d Cir. 2013) (quoting Fed. R. Civ. P. 23(b)(3)).  "[M]anageability is, by [] far, the most critical concern in determining whether a class action is a superior means of adjudication." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 82 (2d Cir. 2015) (citation omitted).

Manageability of a particular class action is "an issue peculiarly within a district court's discretion." *Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010) (citation omitted).

Because of the potential cost of litigation as compared to the money lost to fraudsters and the potential size of the class, which would include thousands of accountholders, Judge Marutollo found that a class action is superior to individual claims. (R&R at 47-48.) Defendant objects to Judge Marutollo's finding, arguing that the class is, however, not manageable. Not so.

As an initial matter, Plaintiffs' EFTA claim raises a single question under one federal statute and, thus, could be resolved by an articulation of a single legal standard. *Cf. Candelaria v. Conopco, Inc.*, No. 21-CV-06760 (NCM) (TAM), 2025 WL 1826454, at *10 (E.D.N.Y. July 2, 2025) (finding that a class action would not be the superior method for adjudicating plaintiff's product liability claim because, inter alia, "an articulation of a single legal standard" would not resolve the issue at hand). And, while the proposed class members' breach of contract claims might involve the laws of different states, here, TD Bank requires all customers to agree to the terms of the Personal Deposit Account Agreement, which are the same for all accountholders, (Pls.' Mot. Cert. Class at 11; Pls.' Mot. Class Cert., Ex. 50 ("Personal Deposit Account Agreement") at 48-49, ECF No. 45-50; Crouchelli Dep. at 37:19-38:16, 41:15-42:21). Generally, courts have found certification to be appropriate under Rule 23(b)(3) for breach of contract claims involving a contract containing essentially the same terms, *see Buffington v. Progressive Advanced Ins. Co.*, 342 F.R.D. 66, 74 (S.D.N.Y. 2022) ("There is widespread agreement that certification under Rule 23(b)(3) is warranted for claims that involve contracts that, like here, contain the same or essentially the same terms." (citation omitted)). As such, a class would be manageable.

Moreover, the potential class size and the negative value of the suit weigh in favor of a finding of superiority. Here, the class is likely to consist of thousands, and, as demonstrated by Plaintiffs, the losses alleged are unlikely to be no more than a few thousand dollars—that is, less than the cost of litigation. (Pls.' Mot. Class Cert. at 1.); *See In re Sinus Buster Prods. Consumer Litig.*, No. 12-cv-02429, 2014 WL 5819921, at *6 (E.D.N.Y. Nov. 10, 2014) (concluding that the case before it "present[ed] the classic negative value case because there [we]re thousands of potential plaintiffs and each individual plaintiff's claim[] [wa]s worth a small amount-at most ... around five dollars" (internal quotations omitted)); *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 537 (E.D.N.Y. 2017) (reasoning that the case before it was a negative value suit where the highest alleged claims were "not likely to be more than a few thousand dollars") (collecting cases). As such, it is unlikely that other class members will have a strong interest in individually controlling the litigation. *See Candelaria*, 2025 WL 1826454, at *11 ("While not required to support certification, one of the most compelling rationales for finding that this factor weighs in favor of finding superiority is the existence of a negative value suit, that is, a suit in which the costs of prosecuting an individual action would exceed the expected recovery."). This is further demonstrated by the lack of pending litigation by other class members, which also weighs in favor of superiority. *Cf. id.* at *12 ("Where other actions are pending and there is 'a clear threat of multiplicity and a risk of inconsistent adjudications ... a class action may not be appropriate [] unless the other suits can be enjoined[.]'")

In support of their objection to Judge Marutollo's finding of predominance and superiority, Defendant reiterates its arguments regarding typicality, again relying on the assertion that the evaluation of each claim is too fact-intensive to establish a common question that predominates over individual questions, and, again citing *Almon*. (*See* Def.'s Obj. at 19-25.)

The Court, again, disagrees.  Because the common question of whether TD Bank's standard procedure violates the EFTA and breaches the Personal Deposit Account Agreement is the crux of the class action, and because this question could be resolved for Plaintiffs and the proposed class in one fell swoop, the common question predominates over the individual question. Further, given the above reasons, a class action would also be superior to individual actions in this case.

## CONCLUSION

For the foregoing reasons, the Defendant's objections to the R&R are SUSTAINED in part and OVERRULED in part.  The R&R is ADOPTED with respect to provision 3(a) of the EFTA and Breach Classes and REMANDED in part for the magistrate's analysis with respect to subsections 3(b)-(e) of the provisional classes.  Plaintiffs' motion to certify the class is GRANTED in part and DENIED in part with leave to renew.

SO ORDERED.

Dated: Brooklyn, New York                          /s/ LDH_____
       May 5, 2026                          LASHANN DEARCY HALL
                                United States District Judge